**FIRST SECURITY BANK, Plaintiff,**

v.

**Ronald H. McMILLAN and William Kellogg, jointly and severally, Defendants.**

No. G84–1332CA1.

United States District Court, W.D. Michigan, S.D.

Dec. 20, 1985.

McShane & Bowie by John R. Grant, Grand Rapids, Mich., for plaintiff.

Barron, Serafin & Devlin by Robert Devlin, Houston, Tex., Linsey, Strain & Worsfold by Patrick D. Murphy, Grand Rapids, Mich., for defendants.

## OPINION RE MOTIONS TO DISMISS

HILLMAN, District Judge.

Plaintiff, First Security Bank, brings this diversity action against defendants, Ronald H. McMillan and William Kellogg, to recover damages for breach of two guaranty contracts. Currently before the court are defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer this action to the United States District Court for the Southern District of Texas.

### FACTUAL BACKGROUND

Plaintiff's action arises from several guaranty contracts that defendants signed in 1980. On March 7, 1980, defendants signed contracts guaranteeing "all existing and future indebtedness" owed to plaintiff by Quality Tape, a Michigan partnership located at 134 Weston, S.W., in Grand Rapids, Michigan. On March 10, 1980, defendant Ronald McMillan signed a second guaranty contract for "all existing and future indebtedness" owed to plaintiff by Mary McMillan. Through an affidavit signed by its president, Harry R. Larkin, plaintiff alleges that defendants signed the Quality Tape guaranty contract at plaintiff's offices in Ionia, Michigan. Defendant Kellogg does not dispute this allegation. Defendant McMillan, however, states by affidavit that he signed the Quality Tape guaranty contract in Houston, Texas. The parties have failed to discuss whether defendant McMillan signed the second guaranty contract on March 10, 1980, in Michigan or Texas.[1]

Plaintiff asserts that Quality Tape and Mary McMillan have defaulted on loans that defendants' 1980 guaranty contracts cover. Plaintiff, therefore, now seeks to recover those outstanding loans from defendants on the basis of defendants' 1980 guaranty contracts.

### DISCUSSION

Defendants move to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Plaintiff carries the burden of establishing personal jurisdiction over defendants. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). Plaintiff, however, must only show a prima facie case of personal jurisdiction over defendants where, as here, the court decides the jurisdictional issue solely on the basis of written materials. *Id.* Furthermore, the court should consider such documents concerning juris-

---

1. In his answer to plaintiff's complaint, defendant McMillan asserts the following:

    "This Defendant does not respond to Count II of the Plaintiff's Original Complaint, [which concerns the March 10, 1980 guaranty contract for plaintiff's loan to Mary McMillan,] as he has been lead [sic] to believe that Plaintiff has waived the allegations contained within said Count II."

Defendant McMillan's motion to dismiss or, in the alternative, to transfer fails to distinguish between Count I and Count II of plaintiff's complaint. Furthermore, plaintiff has not notified the court that it has voluntarily dismissed Count II. Accordingly, this court must consider defendant McMillan's motion with regard to Count I and Count II of plaintiff's complaint.

dictional facts in the light most favorable to plaintiff. *Id.* at 439; *Bialek v. Racal-Milgo, Inc.,* 545 F.Supp. 25, 33 (S.D.N.Y. 1982).

▮ Under Fed.R.Civ.P. 4(e), a federal court has personal jurisdiction over a nonresident defendant to the extent allowed by the long-arm statute of the forum state. In addition, the due process clause of the fourteenth amendment to the United States Constitution limits a court's assertion of *in personam* jurisdiction over a nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Accordingly, a federal court must undertake a two-party inquiry when presented with a motion to dismiss for lack of personal jurisdiction. First, the court must consider whether personal jurisdiction exists in accordance with the statutory requirements of the forum state. Second, the court must consider whether the "exercise of personal jurisdiction is consistent with due process." *Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309, 312 (8th Cir.1982).

· In this case, the applicable Michigan long-arm statute is M.C.L.A. § 600.705(1). Section 600.705(1) specifies the following:

"The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record. of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state."

Michigan courts have interpreted section 600.705(1) to expand a court's *in personam* jurisdiction over a nonresident defendant to the extent permissible under the due process clause of the fourteenth amendment to the Constitution. *Sifers v. Horen,* 385 Mich.App. 195, 188 N.W.2d 623 (1971); *City Suburban Agency, Inc. v. Dade Helicopter Services, Inc.,* 141 Mich.App. 241, 366 N.W.2d 259 (1985).[2] *See also Hertzberg & Noveck v. Spoon,* 681 F.2d 474, 478 (6th Cir.1982); *American Business Overseas v. Methods Research Products, Inc.,* 593 F.Supp. 1, 3 (W.D.MI.1983); *First National Monetary Corp. v. Chesney,* 514 F.Supp. 649, 651–52 (E.D.MI.1980). Consequently, with regard to defendants' motions to dismiss for lack of personal jurisdiction, this court must only determine whether assertion of *in personam* jurisdiction over these defendants comports with due process.

The United States Supreme Court in a series of cases has outlined the due process limitations to *in personam* jurisdiction over nonresident defendants. In *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158, the Court held that an exercise of *in personam* jurisdiction over a nonresident defendant not present within the forum state requires that the nonresident defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The Court in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292, 100 S.Ct. at 564, explained that the concept of "minimum contacts" (1) "protects the defendant against the burdens of litigating in a distant or inconvenient forum" and (2) "ensure[s] that the States, through their courts, do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system."

From these principles, the Court of Appeals for the Sixth Circuit has adopted a three-step analysis to determine whether an exercise of personal jurisdiction, pursuant to a state long-arm statute, complies with due process:

---

**2.** *But see Hapner v. Rolf Brauchli, Inc.,* 404 Mich. 160, 273 N.W.2d 822 (1978) (Levin, J., opinion for remand) (disagreeing with the contention that the Michigan long-arm statute expands limited personal jurisdiction to the fullest extent of due process).

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable."

*Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). The Sixth Circuit has cautioned that the first two elements of the test simply involve a search for the specific types of contacts which have been held to be essential to the maintenance of jurisdiction. The third element must be applied with the flexibility of the underlying *International Shoe* test and demands "an appraisal of the overall circumstances of each case if jurisdiction is to be found." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir.1972).

Several courts have considered the question presented in this case—whether assertion of *in personam* jurisdiction over nonresident guarantors satisfies the requirements of the due process clause. *See, e.g.,* Casad *Jurisdiction in Civil Actions* ¶ 4.02[1][a][xi]. For example, the Court of Appeals for the Sixth Circuit in *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir.1982), found that the lower court sitting in Kentucky had *in personam* jurisdiction over five nonresident guarantors. In *National Can*, the guarantors executed the guaranty contracts in North Dakota and mailed them to plaintiff in Illinois. Three of the guarantors were shareholders in the debtor corporation which had its principal place of business in Kentucky. The remaining two guarantors were not shareholders but had "propriety interest in the [debtor corporation] through the marital property laws." The Court of Appeals in *National Can* held that the guarantors' economic interest in the debtor corporation furnished the necessary minimum contacts with Kentucky, the forum state. *Id.* at 1137.

In *Lazzaro v. Charlevoix Lakes,* 108 Mich.App. 120, 310 N.W.2d 295 (1981), the Michigan State Court of Appeals found that the Michigan long-arm statute, M.C.L.A. § 600.705(1), allowed application of *in personam* jurisdiction over four nonresident guarantors. In *Charlevoix Lakes,* the plaintiff was a Massachusetts Business Trust and the underlying debtor was an Ohio joint venture. Two of the guarantors were the prime movers behind the joint venture formed to develop a real estate project in Michigan. The two remaining guarantors were spouses of the other guarantors. The guarantors signed the guaranty contracts in Ohio. Given those facts, the court held that:

"the acts of the individual defendants in guaranteeing the loan agreement by which the purchase, development and security of the condominium project in Michigan was made possible and out of which this action arises [are] within the scope of being 'transaction of any business within the state,' so as to confer limited personal jurisdiction pursuant to M.C.L. § 600.705(1)."

*Id.* at 310 N.W.2d 295, 297.[3]

In light of the three criteria outlined in *Southern Machine* and the reasoning in *National Can* and *Charlevoix Lakes,* this court clearly has *in personam* jurisdiction

---

**3.** Although recognizing that the Michigan Supreme Court had interpreted the Michigan long-arm statute as coextensive with the due process clause, the court in *Charlevoix Lakes* found that the due process clause prevented assertion of *in personam* jurisdiction over two of the guarantors. That interpretation of the scope of the due process clause is illogical given the court's finding of *in personam* jurisdiction within the Michigan long-arm statute. A state's long-arm statute cannot expand the reach of *in personam* juris-diction beyond the constitutional limits of the due process clause. *See* Richardson & Mayes, *Jurisdiction, 1982 Annual Survey of Michigan Law,* 29 Wayne L.Rev. 357, 358–59 (1983). In any event, the scope of due process limitations upon *in personam* jurisdiction over nonresident defendants is a matter of federal law. And state court decisions on such matters of federal law are not binding on federal courts. *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 193 (8th Cir.1965).

over defendants with regard to plaintiff's claim to recover on the Quality Tape guaranty contracts. First, defendants availed themselves of the privilege of transacting business in the State of Michigan. The defendants voluntarily signed the guaranty contracts on March 7, 1980. Regardless of the place of execution, those guaranties were intended to assist a Michigan business—Quality Tape. In fact, defendant Kellogg was an officer of Quality Tape at the time he signed the guaranty contract. Furthermore, plaintiff's cause of action arises from the guaranty contracts, which provide the connection between defendants and the State of Michigan. Finally, the Quality Tape guaranty contracts have a substantial enough connection with Michigan to make the exercise of *in personam* jurisdiction over defendants reasonable. Defendants knew that their guaranties would allow Quality Tape to continue business operations in Michigan. They guaranteed repayment of loans made by a Michigan bank to a Michigan business. Exercise of *in personam* jurisdiction over these defendants is neither unfair nor unreasonable. Plaintiff has established a prima facie showing that this court has limited *in personam* jurisdiction over defendants with regard to plaintiff's claims under the Quality Tape guaranty contracts.

Consequently, defendants' motions to dismiss Count I of plaintiff's complaint for lack of personal jurisdiction is denied.

Defendant McMillan also moves to dismiss Count II of plaintiff's complaint for lack of personal jurisdiction. In Count II, plaintiff seeks to recover on defendant Ronald McMillan's guaranty contract for indebtedness owed to plaintiff by Mary McMillan. As with defendants' motions to dismiss Count I, plaintiff must establish a prima facie showing that assertion of *in personam* jurisdiction over defendant McMillan with respect to the "Count II guaranty contract" would satisfy due process requirements.

Neither plaintiff nor defendant has submitted an affidavit concerning the Count II guaranty contract. Plaintiff has submitted the loan agreement between itself and Mary McMillan and the guaranty contract of defendant Ronald McMillan allegedly guaranteeing repayment of that loan. On April 5, 1980, plaintiff loaned Mary McMillan $15,000.00. On March 10, 1980, defendant Ronald McMillan apparently signed the guaranty contract guaranteeing "payment when due ... of all existing and future indebtedness to the [plaintiff] of Mary McMillan." Plaintiff has offered no showing whether defendant Ronald McMillan executed the Count II guaranty contract or whether the parties negotiated that guaranty contract in Texas or in Michigan. Although the loan to Mary McMillan appears to be for personal or household use, plaintiff has made no showing whether the loan was intended for use in Texas or Michigan. Furthermore, the loan agreement lists Houston, Texas, as Mary McMillan's address.

Defendant McMillan may have availed himself of the privilege of transacting business in the State of Michigan by signing the Count II guaranty contract with plaintiff. In addition, plaintiff's cause of action arises from that guaranty contract, which provides the connection between defendant and the forum state. Nonetheless, "courts [should] avoid resort to artificial guidelines which simplify decision making, but obscure the realities of the situation. The courts must consider each long-arm question in relation to traditional notions of fair play which mark the outer limits of due process." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 236 (6th Cir.1972).

In this case, plaintiff has failed to demonstrate that the acts of defendant McMillan have a substantial enough connection with Michigan to make the exercise of *in personam* jurisdiction over the defendant reasonable. Plaintiff has not shown any facts that would indicate that defendant McMillan should have expected to be summoned into a Michigan court in a dispute concerning the Count II guaranty contract. *See id.* at 233. Additionally, plaintiff has not shown that the State of

Michigan has any significant interest in resolving this contract dispute. Plaintiff has not shown that the loan to Mary McMillan was to be used in Michigan. *See id.* at 232 (explaining the importance of the forum state's interest in resolving whether assertion of *in personam* jurisdiction would be reasonable). The guaranty agreement does not indicate that the money was due and payable in Michigan. *See Hertzberg & Noveck v. Spoon,* 681 F.2d 474, 479 (6th Cir.1982). On the basis of the current record, plaintiff has failed to make a prima facie showing that assertion of *in personam* jurisdiction over defendant McMillan with respect to Count II satisfies the due process clause of the fourteenth amendment.

Consequently, defendant McMillan's motion to dismiss Count II of plaintiff's complaint for lack of personal jurisdiction is granted.

### MOTION TO TRANSFER

■ In addition to their motions to dismiss for lack of personal jurisdiction, defendants move to transfer this action to the United States District Court for the Southern District of Texas. Defendants rely on 28 U.S.C. § 1404(a) to support their motions to transfer.

Section 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) revises the common law principle of *forum non conveniens.* The Supreme Court has explained that this provision "embodies in an expanded version the common law doctrine of forum non conveniens, under which a court in appropriate circumstances may decline to exercise its jurisdiction in the interest of the 'easy, expeditious, and inexpensive' resolution of a controversy in another forum." *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 2185 n. 20, 85 L.Ed.2d

528 (1985). District courts have "more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981). Nonetheless, defendants carry the burden to show the need for transfer. "The Court must give foremost consideration to the plaintiff's choice of forum, and the balance must weigh 'strongly in favor of a transfer' before the Court should grant a § 1404(a) motion." *Priess v. Fisherfolk,* 535 F.Supp. 1271, 1279 (S.D.OH.1982). *See also Nicol v. Koscinski,* 188 F.2d 537 (6th Cir.1951).

Defendants in this case have not offered any specific justifications in support of their motion to transfer venue. The only apparent factor in favor of transfer is defendants' residences in Texas. Standing alone that factor is insufficient to justify transferring this civil action to another district court pursuant to section 1404(a).[4]

Consequently, defendants' motions to transfer are denied.

### SUMMARY

Defendants' motions to dismiss Count I of plaintiff's complaint pursuant to Fed.R. Civ.P. 12(b)(2) for lack of personal jurisdiction are denied.

Defendant Ronald McMillan's motion to dismiss Count II of plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is granted.

Defendants' motions to transfer this action under 28 U.S.C. § 1404(a) are denied.

---

**4.** *See Stabler v. New York Times Co.,* 569 F.Supp. 1131, 1137–38 (S.D.TX 1983) (denying motion to transfer to district court of defendant's home state).