NATIONAL CAN CORPORATION,
Plaintiff-Appellant,
Plaintiff-Appellee,

v.

K BEVERAGE COMPANY, Defendant,

Barbara Lundervold, Hayden Thompson
and Joanne Thompson,
Defendants-Appellees,

Allen Lundervold and Warren Anderson,
Defendants-Appellants.

Nos. 80–3112, 80–3173.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1981.

Decided April 2, 1982.

Rehearing Denied June 8, 1982.

Russell H. Saunders, Malcolm Friedman, Kenneth S. Handmaker, Handmaker, Weber & Meyer, Louisville, Ky., for plaintiff-appellant.

W. Waverly Townes, Nold, Mosley, Clare, Hubbard & Rogers, Louisville, Ky., for defendants-appellees.

Before EDWARDS, Chief Circuit Judge, ENGEL, Circuit Judge, and PECK, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

This case presents an interesting set of facts concerning the constitutional reach of a state long-arm statute. At issue is whether or not all of the facts and circumstances of this case, beginning with the execution of personal guaranties by the five defendants, give Kentucky *in personam* jurisdiction over all of these nonresident guarantors.

Plaintiff National Can, a Delaware corporation with its principal place of business in

Illinois, contracted to sell glass bottles to defendant K Beverage Company (henceforth KBC), a Colorado corporation with its principal place of business in Louisville, Kentucky. KBC was a franchisee of Pop Shoppes of America, and its business was the sale of multi-flavored soft drinks.

There are five individual defendants who are the principal parties in this appeal: Allen and Barbara Lundervold, Hayden and Joanne Thompson, and Warren Anderson. The Thompsons and Anderson are residents of North Dakota; the Lundervolds are residents of Minnesota. Anderson, Hayden Thompson, and Allen Lundervold were the shareholders of KBC.[1] The two wives were not shareholders in name but are said to have a propriety interest in KBC through the marital property laws.

Before shipping any bottles to KBC in Louisville, National Can demanded and received the personal guaranties of all five individual defendants, refusing to rely on KBC's credit alone. The guaranty contracts were executed in North Dakota and mailed to plaintiff in Illinois.

Soft drink sales in Kentucky fizzled. KBC failed to pay for the bottles supplied by National Can, and National Can sued KBC on the contract and the individuals on their guaranties. The question in this case is whether or not the federal district court sitting in Kentucky had *in personam* jurisdiction over the five individual defendants. The lower court decided this issue by dismissing the claims against Joanne and Hayden Thompson and Barbara Lundervold for want of jurisdiction. He entered summary judgment in favor of National Can against KBC, Warren Anderson and Allan Lundervold. Plaintiff appeals the dismissal of its action against the Thompsons and Barbara Lundervold, and the two individual defendants appeal from the judgment entered against them. Defendant KBC has not appealed.

It is clear that in a diversity case the personal jurisdiction of a federal district court is governed by the long-arm statute of the state in which it sits. The federal court must decide first, whether the statute authorizes jurisdiction over the nonresidents, and second, whether this jurisdictional reach is constitutional. Where the state has permitted its courts to reach to the constitutional limits in pursuing nonresident defendants, the two questions become one. *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1188 (6th Cir.), *cert. denied, Insurance Co. of North America v. Poyner*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

Kentucky Revised Statute § 454.-210(2)(a), under which jurisdiction is asserted, provides: "A Court may exercise jurisdiction over a person who acts directly or by an agent as to a claim arising from the person's: 1. Transacting any business in this Commonwealth." This Court has held this statute purports to extend its reach to the limits of the federal due process clause. *Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., LTD*, 513 F.2d 1176, 1179–81 (6th Cir. 1975). *See also Tube Turns Div. of Chemtron v. Patterson Co.*, 562 S.W.2d 99 (Ky.App.1978). Therefore, the only question for this court to decide is whether or not exercise of personal jurisdiction over these defendants is constitutionally permissible.

The Supreme Court recently reaffirmed its test for a constitutional assertion of *in personam* jurisdiction. Citing to its decision in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Court stated, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Those contacts must be substantial enough to ensure that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe, supra*, 326 U.S. at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

---

1. A fourth shareholder, Ross Watson, is not involved in this case.

With respect to the appeal of Allen Lundervold and Warren Anderson, it is not difficult to find the requisite minimum contacts with Kentucky existed. Lundervold served as general manager and secretary-treasurer of KBC and in that capacity moved to Louisville and operated the company. He and his wife Barbara bought a home in Kentucky, in which they both lived for about one year. Warren Anderson was president of KBC and visited Louisville about once a month to oversee the company's business. As president he executed in Kentucky a lengthy finance statement and security agreement with a Louisville bank. The activities of these defendants as officers and shareholders of KBC, which are in addition to the signing of personal guaranties, are more than sufficient to occasion the dismissal of the two defendants' appeals.

National Can was also entitled to prevail in its suit against the other three defendants, whom the District Judge dismissed on motion. Hayden Thompson was a shareholder of KBC and served as its vice-president. He, along with Warren Anderson and Allen Lundervold, was assigned a security interest in the Kentucky assets of KBC, which included the soft drink bottles supplied by National Can. This security interest was filed in Jefferson County, Kentucky.

For Barbara Lundervold and Joanne Thompson, the contacts are more limited. Barbara, together with her husband, purchased a home in Kentucky and moved to the state for a year in connection with Allen's duties as shareholder and manager of KBC. There is no showing, however, that Barbara performed any activities in relation to the company or to this lawsuit during her year in the Commonwealth. As for guarantor Joanne Thompson, this is a naked minimum contacts case. It is undisputed that Joanne never set foot in Kentucky. Her only relationship to the state is the signing of the guaranty agreement and her marital interest in the KBC shares. Although neither Barbara nor Joanne was a shareholder of record, the marital property laws of all states connected with this transaction [2] give a wife a right to share in property acquired by her husband during the marriage. All parties must have recognized the existence of this property interest in that Barbara's and Joanne's signatures on the guaranties were demanded and received. In signing, Barbara and Joanne risked their names and financial worth to aid in the establishment of a Kentucky venture in which they had a property interest. The fact that they were not named shareholders does not negate a proprietary concern in the success of KBC. It is our opinion that the guaranties, when signed by a person with an economic interest in the corporation, furnished the necessary minimum contacts. We find Kentucky had jurisdiction over all five individual defendants.

In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), this Court set forth guidelines for determining jurisdiction when only one act is involved:

From these two cases,[3] three criteria emerge for determining the present outerlimits of *in personam* jurisdiction based on a single act. First, the defendant must purposefully avail himself of the

---

**2.** The laws of the involved states call for equitable disposition of marital property. *See, e.g.,* Colo.Rev.Stat. § 14–10–113 (1973 and Supp. 1980), *In re Marriage of Gehret,* 41 Colo.App. 162, 580 P.2d 1275 (1978), *Kalcevic v. Kalcevic,* 156 Colo. 151, 397 P.2d 483 (1964); Ky.Rev. Stat. § 403.190 (1979); *Culver v. Culver,* 572 S.W.2d 617 (Ky.App.1978); Minn.Stat. §§ 518.-54(5) and 518.58 (Supp.1980); *Propper v. Propper,* 301 Minn. 100, 221 N.W.2d 566 (1974); N.Dak.Cent.Code § 14–05–24 (1981), *Nastrom v. Nastrom,* 284 N.W.2d 576 (N.Dak.1979). Marital property generally is defined as all

property acquired by either spouse during the marriage that does not fall within certain specified exceptions, such as a gift or inheritance. There is no indication anywhere in the record that the KBC shares were non-marital property.

**3.** The *Southern Machine* court relied on *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), in fashioning its test.

privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

All three criteria are met by the guarantors' actions here. First, the defendants voluntarily signed the guaranties, without which credit would not have been furnished. The guaranty agreements showed clearly that the business the guarantors were assisting in creating was to be located in Kentucky. Those guaranty agreements, in the first paragraph, identified the debtor as "Kentucky Beverage Co., D/B/A Pop Shoppes of America, Louisville, Kentucky"; therefore it is without question that *all* guarantors, including Barbara and Joanne, knew that Kentucky was the chosen site for the soda pop venture. The guarantors were either shareholders or through marital rights had an economic interest in KBC. Signing a personal guaranty for a Kentucky business in which one has an economic interest is the sort of "conduct and connection with the form State" that makes it reasonable to "anticipate being haled into court there" when the underlying contract is breached. *See World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567. In *In Flight Devices Corp. v. Van Deusen Air., Inc.,* 466 F.2d 220, 226 (6th Cir. 1972), this court stated:

> In this Circuit one has "acted" so as to transact business in a state "when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state." Such "acts" become purposeful if the defendant "should have reasonably foreseen that the transaction would have consequences in that state."

*quoting* 401 F.2d at 382–83.

In this case, the guaranties were essential for the start-up of defendants' Kentucky enterprise and constitute the sort of purposeful act contemplated by this Court in *Southern Machine.*

The second aspect of the test obviously is satisfied. The guaranty agreements are the basis for the action. The third aspect concerns whether or not the dispute has a substantial enough connection with Kentucky to compel defendants to defend suit there. *Southern Machine, supra,* at 384. In this case, a sufficient connection exists. The guarantors, as owners of KBC, freely and intentionally chose to locate their corporation in Kentucky. To ensure the success of their enterprise, they voluntarily signed personal guaranties that were a vital factor in KBC's establishment. By virtue of KBC's location in the Commonwealth, the business operations set in motion by defendants had a realistic impact on the commerce of Kentucky. *See Southern Machine, supra,* at 382. It is the state where the company was headquartered and where its products were sold. As the home of defendant KBC, Kentucky was a reasonable and logical place for suit to be brought against all defendants. Defendants "cannot complain if along with the profits from the [Kentucky] market [they] must also accept the process from the [Kentucky] courts." *Southern Machine, supra,* at 386. Accordingly, we find the federal district court sitting in Kentucky had *in personam* jurisdiction over all five nonresident guarantors.

Defendants Warren Anderson and Allen Lundervold also complain that summary judgment against them was inappropriate because the guaranties were unconscionable. Agreeing with the District Court that no genuine issue of material fact was raised by this argument, the entry of summary judgment is affirmed.

The District Court's dismissal of the complaint against Barbara Lundervold and Hayden and Joanne Thompson is reversed.